BELT RAILWAY COMPANY OF CHICAGO, Plaintiff-Appellee, Cross-Appellant,

v.

UNITED STATES of America, Defendant-Appellant, Cross-Appellee.

Nos. 77–1447 and 77–1448.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1977.

Decided Dec. 8, 1977.

Robert E. Simpson, Vienna, Va., R. F. Koproske, Chicago, Ill., for Belt Railway Co.

Robert T. Duffy, Atty., Tax Division, Dept. of Justice, Washington, D.C., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for U.S.A.

Before CASTLE, Senior Circuit Judge, SWYGERT and SPRECHER, Circuit Judges.

SWYGERT, Circuit Judge.

The questions raised in this matter relate to section 281 of the Internal Revenue Code, 26 U.S.C. § 281, which provides for the taxation of terminal railroad corporations and their shareholders. The Government appeals from a district court ruling that plaintiff Belt Railway Company of Chicago filed an adequate refund claim and was entitled to a refund of taxes paid amounting to $124,174.90. The Government contends that plaintiff's claim for refund was not sufficiently detailed to apprise the Commissioner of Internal Revenue of the disputed amount or the reason for the dispute. It also contends that, regardless of the claim's sufficiency, the plaintiff is not entitled to a refund because it has failed to comply with the provisions of section 281 which govern this dispute. The plaintiff has cross-appealed, contending that the district court erred in holding that certain income of the plaintiff could not be classified as "related terminal income" under section 281(d)(2). We agree with the

Government's contentions and therefore reverse the district court's ruling on the refund claim. We affirm its holding as to the income classification.

## I

A terminal railroad corporation is one which has domestic railroad corporations as its shareholders and is primarily in the business of providing railroad terminal and switching facilities and services to domestic railroads.[1] I.R.C. § 281(d)(1). Section 281 of the Internal Revenue Code, 26 U.S.C. § 281, was enacted in response to court decisions which made a terminal railroad corporation liable for taxes on the gross amount of the service charges due from its shareholders, regardless of whether the corporation reduced or discharged such obligations by crediting income related to the terminal railroad corporation's operations against the charges.[2] Believing that it was undesirable to burden the nation's already ailing railroads, Congress concluded that special rules should be provided so that terminal railroad corporations would not be taxed on related terminal income used to reduce the service charges to its shareholder railroads. These railroads, however, would not be entitled to expense deductions in excess of the actual costs by them.[3]

Not all income received by the terminal railroad corporations was to be eligible for this special treatment. Only that income defined as "related terminal income"[4] would be so treated; unrelated terminal income could not be used in section 281 computations.

In 1963 plaintiff Belt Railway derived $249,361 of related terminal income from its operations. According to the agreement which it had with its shareholders, see I.R.C. § 281(c), this $249,361 should have been credited against service charges payable to plaintiff by its shareholder railroads. This income, however, was erroneously treated by the plaintiff, both on its own books and for tax purposes, as unrelated terminal income; therefore, none of it was credited against the shareholders' charges, and plaintiff paid taxes for 1963 amounting to $124,174.90.

During the years 1962 through 1966 Belt Railway invested some of its terminal operating and working cash. The interest income on these investments was used to reduce the charges made to shareholders for their use of the plaintiff's facilities. From 1963 through 1966 Belt Railway deposited the income from the sale of certain parcels of real estate with the trustee of the security. This was done under the terms of the mortgage agreement, and plaintiff received interest on the amounts so deposited. The terminal company also used this interest to offset charges which its shareholders would otherwise have been obligated to pay. When the plaintiff's federal income tax returns for the years 1962 through 1966 were audited, the Commissioner of Internal Revenue refused in both situations to accept plaintiff's treatment of the interest income as related terminal income and reclassified that interest as unrelated terminal income.

In April of 1970 plaintiff filed five claims for refund with the Internal Revenue Service. Each claim related to one of the five years 1962 through 1966, and each set forth the same broad statement of the grounds on which relief was claimed:

---

1. Taxpayer's shareholders during the years in question were: The Atchison, Topeka and Santa Fe Railway Company; Illinois Central Railroad Company; Chicago, Rock Island and Pacific Railroad Company; Chicago, Burlington & Quincy Railroad Company; The Pennsylvania Railroad Company; Soo Line Railroad Company; The Chesapeake and Ohio Railroad Company; Chicago & Eastern Illinois Railroad Company; Monon Railroad; Erie-Lackawanna Railroad Company; Grand Trunk Western Railroad Company; and Wabash Railroad Company.

2. S. Rep. No. 2273, 87th Cong., 2d Sess., reprinted in [1962] U.S. Code Cong. & Admin. News 3987, 3989.

3. Id. at 3990.

4. "Related terminal income" is defined in I.R.C. § 281(d)(2) and will be discussed in more detail infra. For present purposes, it may roughly be defined as income derived from the use of a terminal railroad corporation's services or facilities.

Failure of Commissioner to properly compute our taxable income including but not limited to applying Section 281 of the 1954 Internal Revenue Code.

None of the claims stated any further grounds or any particular item disputed by plaintiff. Indeed, in the claim relating to 1963, plaintiff indicated a negative amount, i. e., $(28,028.10), in the space in which the amount to be refunded was to be stated. The agent assigned to evaluate the claims for refund asked plaintiff to specify the items upon which it based its claims. While, among other things, plaintiff did specify its contentions regarding the treatment of its interest income as related terminal income, it does not appear that the agent was advised of or considered any information relating to plaintiff's 1963 erroneous treatment of $249,361 in related terminal income. That figure appeared nowhere in the claim for refund and, indeed, was apparently first discovered by plaintiff's own accountants after the Government's audit was made.

The Internal Revenue Service rejected all of plaintiff's claims for refunds, and in May of 1974, plaintiff filed suit in district court. Regarding the 1963 claim, the district court found that the issue of the erroneously treated $249,361 was encompassed within the language of plaintiff's claim for refund, that it actually was related terminal income which had been incorrectly classified, and that plaintiff was entitled to a tax refund of $124,174.90. The court found that the failure to credit the $249,361 against the charges due the shareholders was merely the necessary result of the improper classi-

fication and could be rectified by a simple readjustment of plaintiff's records. As to plaintiff's contention that the interest income from its short-term investments and from its deposits with the mortgagee should have been treated as related terminal income, the district court determined that the interest could not properly be so classified. The Government's appeal and plaintiff's cross-appeal followed these determinations.

## II

■ The Government contends that plaintiff's 1963 refund claim did not state sufficient information to apprise the Commissioner of plaintiff's dispute, that it therefore properly rejected the claim, and that the time has long past for plaintiff to amend its claim or file it anew. It also contends that, regardless of the sufficiency of the claim, plaintiff cannot receive the special tax treatment afforded related terminal income under section 281 until it has credited that income against the charges of its shareholders, and that this crediting is a necessary prerequisite to the availability of the special section 281 treatment.

Section 7422(a) of the Internal Revenue Code provides that no suit for refund shall be maintained in any court until a claim for refund has been filed with the Secretary or his delegate according to the regulations established.[5] The applicable regulation is found in 26 C.F.R. § 301.6402–2(b), which states that the claim must set forth in detail each ground upon which a credit is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.[6]

---

**5.** I.R.C. § 7422(a) provides:

*No Suit Prior to Filing Claim for Refund.*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

**6.** 26 C.F.R. § 301.6402–2(b) (1976) provides:

*Grounds set forth in claim.* (1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. *The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.* The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose

This regulation was in force on April 13, 1970, when plaintiff executed its claims for refund.

That plaintiff has failed adequately to present the grounds and details of its claim for refund for the 1963 error is readily apparent. Although the amount which plaintiff claims was erroneously treated as unrelated terminal income is $249,361, that figure appears nowhere on its claim. Indeed, the only figure which does appear is the cryptic $(28,028.10),[7] which is listed as both the amount of assessment and the amount to be refunded. Neither the $249,-361 error in reporting of unrelated terminal income nor the tax of $124,174.90 which plaintiff sought to have refunded appear anywhere on the claim for 1963 or on that for any other year. The Commissioner is not required to be able to divine these figures; he is entitled to the accurate statement of them which the regulations fairly require.

Furthermore, plaintiff's broad allegation, that the tax has been incorrectly computed under sections "including but not limited to" section 281 of the Code, does not provide any significantly greater clue to the nature and details of plaintiff's claim. Indeed, claims more explicit than plaintiff's have been found wanting in regard to the required specificity. In *Stoller v. United States*, 444 F.2d 1391 (5th Cir. 1971), for example, the refund claim alleged that "the Commissioner of Internal Revenue erroneously determined that the taxpayers' profits from business totaled $16,935.40, which was the taxpayers' correct profit from the business." *Id.* at 1393. The Fifth Circuit held that this did not satisfy the requirements of 26 C.F.R. § 301.6402–2(b), since the taxpayers not only failed to specify the nature of

their claim but also failed to allege facts in support. The court went on to say:

> The Commissioner should not be left to his own devices in order to discover the precise nature of a taxpayer's claim and thus be placed in a position of having to hazard a guess. It would have been very simple for the taxpayers here to state [the facts] in their claim for refund . . . If they had, perhaps this case would have never seen its way into this court. *Id.*

As the Supreme Court said when discussing a similar statutory requirement in an earlier revenue code:

> [Q]uite apart from the provisions of the Regulation, the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which it may be founded. *United States v. Felt & Tarrant Manufacturing Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931).

### III

■ Although we reverse the district court's determination and hold that plaintiff's claim for refund of the taxes paid due to its 1963 error was inadequate and thus could not form the basis of a suit, I.R.C. § 7422(a), it is apparent that plaintiff would not be entitled to a refund on its 1963 claim even if it had been stated with more particularity. This is because plaintiff has admittedly failed to comply with the explicit provisions of section 281.

Section 281(a)(1)(A) provides that a terminal railroad corporation will not be considered to have received or accrued (and thus will not be taxed on) related terminal income which is credited against the service charges due it.[8] Only that amount of relat-

---

as a claim for refund or credit. (Emphasis added.)

7. It appears that this amount, curiously stated in the negative, coincides with the amount of an overassessment of tax for the year 1963 which was determined by an IRS agent during audit and which had been credited against plaintiff's 1962 tax deficiency, discovered in the same audit.

8. I.R.C. § 281(a)(1) provides in pertinent part:

*In general.*—In computing the taxable income of a terminal railroad corporation—

(A) such corporation shall not be considered to have received or accrued—

(i) the portion of any liability of any railroad corporation, with respect to related terminal services provided by such corporation, which is discharged by crediting such liability with an amount of related terminal income, or

ed terminal income which is so credited will be treated as not having been received or accrued. Thus, before plaintiff is eligible for this special treatment of some of its income, it must have credited the accounts of its shareholder railroads by that amount. Plaintiff admits that it has not yet used the $249,361 to reduce the 1963 service charges of its shareholders; it has thus failed to meet the prerequisite for section 281 treatment. Presumably, since the charges were not reduced by the appropriate credit, plaintiff received payment on them. The effect of section 281, however, is to exclude from taxation only those charges which have not been received due to the offsetting credit. Moreover, section 281(b) denies shareholder railroads any deductions for service charges not actually paid as a result of the crediting. Here, the shareholders presumably paid the charges and deducted them. To allow plaintiff to collect a refund before it has made the required credits would be to frustrate the interrelated statutory scheme. Since the tax liabilities of other entities are directly affected, and since the language of the statute is sufficiently explicit, the crediting prerequisite is more than a mere accounting matter.

Besides the language and scheme of the statute itself, its legislative history also compels this interpretation. The Senate Report states:

> Paragraph (1)(A)(i) of the new section 281(a) provides that a terminal railroad corporation is not to be considered to have received or accrued the portion of any liability of any railroad corporation which is discharged by crediting that liability, *if the following conditions are met. The terminal railroad corporation must have discharged, on its books and in fact, that portion of the liability of the railroad corporation payable to the terminal railroad corporation by crediting that liability with an amount of related terminal income (as defined in sec. 281(d)(2)). The liability which is discharged must be a liability with respect to related terminal*

services (as defined in sec. 281(d)(3)) provided by the terminal railroad corporation to the railroad corporation. Moreover, that portion of the liability must be discharged pursuant to an agreement as provided in section 281(c).

Paragraph (1)(A)(ii) of the new section 281(a) provides that a terminal railroad corporation is not to be considered to have received or accrued the portion of any charge which would be made by the terminal railroad corporation to the railroad corporation but which is not made, *if the following conditions are met. The portion of the charge which is not made must result from the terminal railroad corporation having taken related terminal income (as defined in sec. 281(d)(2)) into consideration in computing the net charge to the railroad corporation.* The portion of the charge which is not made must be a charge which would otherwise have been made with respect to related terminal services (as defined in sec. 281(d)(3)) provided by the terminal railroad corporation to the railroad corporation. Moreover, the reduction of the charge must have been made pursuant to an agreement as provided in section 281(c). (Emphasis added.) S. Rep. No. 2273, 87th Cong., 2d Sess., *reprinted in* [1962] U.S. Code Cong. & Admin. News 3987, 3991.

The significance of plaintiff's failure to comply with the statute's directions as to crediting its shareholders is further highlighted by the fact that there is a problem of limitations involved which prevents plaintiff from "going back" to correct a fourteen-year-old error. I.R.C. § 6511(a) provides that a claim for refund must be filed within three years after the filing of the return for the period in question or within two years after the time the tax for that period was paid, the event later in time being the controlling one. The Government's power to assess taxes is similarly

(ii) the portion of any charge which would be made by such corporation for related terminal services provided by it, but which is

not made as a result of taking related terminal income into account in computing such charge  .   .   . .

restricted.[9] *See* I.R.C. § ·6501(a). While these limitations may be extended by agreement, as was apparently the case here, such an extension of the period for assessment only extends the refund claim period for an equal time, plus an additional six months. I.R.C. § 6511(c)(1). Thus it appears to be too late to submit a new claim for 1963. I.R.C. § 6511(a), (b). Plaintiff's filed claim having been rejected, there is no longer anything in its records to amend. *See United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 72, 53 S.Ct. 278, 77 L.Ed. 619 (1933); *Tobin v. Tomlinson,* 310 F.2d 648, 652 (5th Cir. 1962), *cert. denied,* 375 U.S. 929, 84 S.Ct. 327, 11 L.Ed.2d 262 (1963).

### IV

In its cross-appeal plaintiff contends that the district court erred when it refused to recognize the interest plaintiff had received on various investments as related terminal income. Specifically, plaintiff contends that the interest it received from the investment of some of its operating and working cash in U.S. Treasury Bills, commercial paper, and other short-term investments should be treated as related terminal income. It also contends that interest earned on proceeds from the sale of real estate, which proceeds plaintiff deposited with its mortgage trustee as was required, should be similarly treated.

"Related terminal income" is defined in I.R.C. § 281(d)(2), which is set out in the margin.[10] As is evident from the text, the key words in the definition are "facilities" and "services." All aspects of the definition limit related terminal income to that realized by a terminal railroad corporation from the use of its facilities or services. Since subparagraphs (A), (C), and (D) clearly do not apply to the facts involved in plaintiff's contention, it appears that principal reliance is placed on subparagraph (B), which relates to income derived "from the use by persons other than railroad corporations of portions of a facility, or a service, which is used primarily for railroad purposes." I.R.C. § 281(d)(2)(B).

Plaintiff contends that its funds or borrowing are assets used primarily for railroad purposes, and that when used by other persons upon plaintiff's investment or deposit thereof, income derived from that use falls within subparagraph (B) of the definition. The language of the statute, however, is "portions of a facility, or a service," and not "portions of any asset." It can be seen from the legislative history that Congress did not have intangibles such as deposits and investments in mind when the terms "facility" and "service" were used.

In the Senate Report accompanying the bill, S. Rep. No. 2273, 87th Cong., 2d Sess., *reprinted in* [1962] U.S. Code Cong. & Admin. News 3987, a section is devoted to

9. We note parenthetically that if the refund were awarded to plaintiff in this case where it has not yet credited its shareholders' accounts for 1963, this time limitation may bar the Government from "going back" to that year of the shareholders' returns to claim the taxes lost by the deductions for service charges taken by the shareholders, which deductions they would no longer be entitled to once the credits were received. As this point was not argued by counsel for either side, we merely note the possibility and express no opinion thereon.

10. I.R.C. § 281(d)(2) provides:

*Related terminal income.*—The term "related terminal income" means the income (determined in accordance with regulations prescribed by the Secretary or his delegate) of a terminal railroad corporation derived—

(A) from *services or facilities* of a character ordinarily and regularly provided by ter-

minal railroad corporations for railroad corporations or for the employees, passengers, or shippers of railroad corporations;

(B) from the use by persons other than railroad corporations of portions of a *facility, or a service,* which is used primarily for railroad purposes;

(C) from any railroad corporation *for services or facilities* provided by such terminal railroad corporation in connection with railroad operations; and

(D) from the United States in payment *for facilities or services* in connection with mail handling.

For purposes of subparagraph (B), a substantial addition, constructed after the date of the enactment of this section, to a facility shall be treated as a separate facility. (Emphasis added.)

technical explanation. The discussion of section 281(d)(2)(B) gives numerous examples of terminal facilities and services, the use of which by others might give rise to related terminal income. The Report cites in this regard a railroad bridge with an automobile lane where tolls are charged, excess steam sold from a plant generating it primarily for use at the terminal, tracks rented out to a commuter service, and space on the walls of the terminal itself sold or rented for advertising. *Id.* at 3995. Not only are these examples of facilities or services materially different from the interpretation urged by plaintiff, but the example which most closely relates to plaintiff's contention is an example of what is not related terminal income. At the close of the discussion of section 281(d)(2), the Report states: "Gain realized from the sale of terminals, terminal equipment, and other assets owned by the terminal railroad corporation will not qualify as related terminal income." *Id.* at 3996. *A fortiori*, interest on any such gain deposited or invested would not qualify, and we think interest on investments or deposits of other funds fails to qualify as well. Given the apparently deliberate and repeated use of the more particular terms "facilities" and "services" rather than the broader term "assets," and given the examples provided in the legislative history, the conclusion of the district court that the interest should not be treated as related terminal income is well-founded.

The judgment of the district court is reversed in part and affirmed in part.